Mr. Brindley. May it please the court. My name is Beau Brindley and I represent the defendant appellant Randy Lamartiniere. A doctor can know that he's acting outside of generally accepted standards of his peers and standards of medical practice while at the same time sincerely believing that he has the authority to do so in an effort to treat the malady of his patients. And that doctor according to Ruan v. the United States is not guilty of violating section 841 because that doctor is not guilty of as Ruan and Gonzalez stated engaging in drug trafficking as conventionally understood. And it was with that logic. That's why we have juries isn't it? I'm sorry. That's why we have a jury. A jury that's properly instructed. Absolutely. But the problem here is this. The Supreme Court in Ruan explicitly found that failure to even make an effort to engage in conduct that fellow doctors would view as medical care at all is insufficient to establish guilt. The district court in this case when defining the sufficiency of Dr. Lamartiniere's purpose, when defining whether his purpose, his intent was legitimate, whether his intent was exculpatory, they said, the district court instructed the jurors that he had to make an honest effort to comply with general standards of practice in the United States. That was inconsistent with Armstrong, I don't think reaches that question explicitly. Armstrong certainly says that it is sufficient to prove that a defendant acted outside the normal course of practice. Now we do not believe that Armstrong survives Ruan and Cargill. Tell me the difference in the charge in Armstrong and what Ruan said. Well, there's many differences. The opinion in Armstrong said that there were two ways to prove that the doctor is guilty. Either he acted outside the usual course of practice or he acted with no legitimate medical purpose. Either one. Either one. The Supreme Court said first of all that all of that language, that regulatory language was ambiguous, subject to multiple interpretations, vague. They criticized it heavily and instead of interpreting that language of this regulation, they went to the statute itself and they said that the knowing mens re applies directly to authorization. And then they went further and they said to define what they meant and they cited the case of Leperada is a case wherein the Supreme Court said that it was not enough to know the facts that rendered the conduct unauthorized. The defendant had to know that the conduct was authorized or illegal. He had to know he didn't have the authorization to do it. And they likened that to this. And that is simply not what Armstrong does. According to Armstrong, it's good enough to say that a doctor acted outside the usual course of practice. According to the government, if you say, and the district court here, if you say if he knows he's acting outside the usual course of practice, that's sufficient by itself to establish guilt. If that were true, then a doctor who knew that his practices were, or perhaps his record keeping practices, as was the issue with Dr. Lamartiniere, are outside of generally accepted standards, if he knows that. But Searley believes he has the authority to do that because he's trying to help his patients. Ruan goes out of its way to say that doctor is not guilty. Under Armstrong- Can you explain why he was prescribing drugs after he lost his Louisiana license as a doctor? As a matter of fact, there was testimony about that. And there was testimony about a misunderstanding between him and the board about whether or not, that only applies to seven charges, the first seven counts here. I'm well aware, but they were all concurrent. Yes.  But, and so he- So if he was convicted of that, even if the rest went away, he'd still be in prison for that. I, well, I disagree because I think the- If those convictions were proper. I know you don't think any of them are. No, I do not. I think the instruction in this case, failed with respect, makes all of these charges such that they must be reversed. But he knew he lost his license as of January 4th, and he still prescribed these drugs. Why did he think he could do that when he's not a doctor in Louisiana anymore? As a matter of fact, he thought he could do it because he had had this discussion with the board wherein he said he needed to be able to prescribe another dose to each patient, and he was still in the process of doing that. He thought he was allowed to do it. That was a testimony. But when it comes to whether or not that is sufficient to violate Section 841, that's a separate matter. The requi- The charge in Armstrong also said that you've got to, the jury should consider all the surrounding circumstances. Sure. And Ruan emphasized that and said when the jury considers all the circumstances, including the regulations, then the more unreasonable it gets that the doctor could believe that he's following usual practice, then that gives the jury the right to find that he knew about it. That's absolutely right, and that's the thing. What Ruan says is that those issues about regulation violation, that's objective, circumstantial evidence that can be considered when assessing the dispositive question of his subjective intent. The problem here is that the district court told the jury that when it comes to purpose, how to define whether his purpose is good enough or not, that's defined by whether he So a doctor who believes that he's authorized to help his patients, even if he's outside of what the medical regulations or medical standards normally would be for his peers, he's guilty under this statute. Ruan says he shouldn't be. Dr. Lamartin-Year is an unusual case because he is not the doctor that we usually are going after. This is not someone who is profiting from prescribing more pills. This is not someone who is prescribing the highest dosages. This is not someone who is giving the people what they want, to put it simply. He's in these meetings with the undercovers, repeatedly refusing to give them the drugs that they're asking for. He is unusual in this regard. But the district court charged that the government must prove that the defendant knew he was He did say that, but then he goes on to define what medical purpose means. He says he has to know that he's acting in an unauthorized manner. But when it goes to his purpose and his intent, he says whether or not his purpose or intent is good is defined objectively. And you know that the district court thought that this was an objective standard because he made that comment when we were arguing about it. He said, well, this isn't a subjective criteria. This isn't hobby lobby. If you have a sincerely held belief you're helping a patient, that's not good. But Ruan says that it is. And that's precisely what Conn 2 says. The Tenth Circuit took this up after we took Conn 2 to the Supreme Court, and then we went back to the Tenth Circuit in Conn 2. And the Tenth Circuit said explicitly that knowingly acting outside the usual course of practice. You have authorization and you also have mens re. There's two points. Sure. Those are different. Yes. Isn't that where these differences that you're upset about in the jury charge are addressing? Not in a way that the jury could possibly understand. If you tell a jury the definition of whether someone's purpose is legitimate or not, they're going to think that, well, his intent is only good if he was trying to follow these standards. But that's not what Ruan says. Conn 2, as I was saying, says explicitly knowingly failing to follow the usual course of practice is not sufficient to establish guilt. Conn 2 says knowingly acting without a legitimate medical purpose is not sufficient to establish guilt. Why? Because as Ruan stated explicitly, this is about whether he knew he had the legal authorization to do it. If he thinks he can do it sincerely, regardless of whether he's deviating from what everybody else does, he's not guilty. This came directly out of, I mean, the charge, the government must prove that he knew he was acting in an unauthorized manner when he dispersed the drugs or intended to act in such a way. It's just right out of Ruan. He, that, well, there's a sentence in Ruan that says that. Ultimately, what Ruan says repeatedly is that what must be proved is that the defendant knew he was not authorized. And when we're talking about he knew he was not acting in an unauthorized manner, that manner part is a problem. And the reason it's a problem is because there is a difference between knowing the facts that would make your conduct unauthorized. Well, you're just disagreeing with Ruan now. No, no, I'm not. Absolutely not. Ruan explicitly says that the defendant needs to know that he's authorized. Ruan has one sentence that says that he needs to know he's not acting in an unauthorized manner. I think that's an inartful part of the opinion. But regardless of that, the most important problem here isn't just the straightforward elements. It's how he defines them afterwards. He gives the elements, and then he gives a definition of purpose that is objective. If you tell a jury whether his purpose is good enough, purpose means intent to everybody, any average person. If I say, what's your purpose? He says, why'd you do it? What's your intent? That's it. So you tell a jury that whether your intent is good is dependent on whether you follow objective standards. That jury thinks, well, if you didn't follow objective standards, then you knew you were unauthorized. And he should never have given that. We fought tooth and nail, and we couldn't change his mind. And that's what puts us in this position. With regard to Armstrong, and with regard to this entire question of whether indeed it is sufficient to have a defendant, a practitioner, found guilty for failing to act in accord with generally accepted standards or in the usual course of practice, all of that usual course of professional practice comes directly from these regulations. None of it is in the Controlled Substances Act. Armstrong itself was an evaluation, an assessment of the regulations. On its face said it wasn't a statutory analysis. After Cargill, this court on Bach made it clear that when it comes to criminal statutes, an attorney general doesn't get deference on his interpretation. These regulations are the attorney general defining authorization, which is the very thing that separates guilt from innocence. The attorney general gave that definition, and there is nothing in the Controlled Substances Act that even comes close to delegating that authority. When you add Ruan to Cargill to the major questions doctrine, this idea that the attorney general had this authority cannot be upheld. And the simple fact is Armstrong was a plain error case that did not address these issues and did not have this backdrop. And so regardless of Armstrong, the court improperly defined purpose of the defendant, and that contravened the meaning of Ruan. Armstrong on its face is now directly inconsistent with Con 2. Con says it is not sufficient to prove that he acted in, knowingly acted outside the usual course. Armstrong says it is. So there is right now a circuit split between what 10 sees after Ruan and what Armstrong was before Ruan happened. And we believe that Ruan, Cargill, and the major questions doctrine render Armstrong no longer good law that has to be followed. Now, with regard to those first seven charges, I want to get back to that for a minute before I finish. The idea that a person can be convicted under 841 as a drug trafficker because he has a suspended license comes only from 1306.03. That's also a regulation. It's not in the Controlled Substances Act. That seems the most obvious. I mean, I still have my lawyer license, but I don't practice as a lawyer. But when I was, if that got taken away, I would stop it immediately because I would know, oh, my heck, I can't do this. Sure. And that because you would be subjected to penalties in the state, potentially, for doing that. But the question here is a specific one. Does it violate Section 841? And under what circumstances? And we know it doesn't because the Controlled Substances Act text itself sets forth the procedures for revoking his DEA registration, which is his federal licensure. And whether he has a state license suspended is only one factor to be considered. It is not dispositive. Your initial time has expired, and you've saved time for rebuttal. Thank you. Thank you, Your Honor. Good morning, and may it please the Court. My name is Patricia Jones, and I represent the United States. Let me begin with an issue that Judge Davis brought up, which is that the jury here was, in fact, instructed that they had to find that the defendant was acting in an unauthorized manner, or that he knew he was acting in an unauthorized manner, or that he intended to distinguish in an unauthorized manner and knew he was unauthorized. But that distinction is nowhere to be found in Ruan, and it was not one sentence in which Ruan said, in an unauthorized manner. They repeatedly phrased the issue in that manner, over and over again. Sometimes they said the defendant had to know he was unauthorized. Sometimes they said he had to know he was acting in an unauthorized manner. So there's no distinction. The proponent is saying the way no is defined is different from, like, I know what this room looks like, versus if I've never been in it, and there's no pictures of it, but I'm supposed to know what it looks like. Well, and, Your Honor, I'm not sure I'm understanding. Well, he's saying the definition of kind of what was defined as knowing, as what you knew about and how you knew about it and all that, is what was wrong. And so, like, for example, you're supposed to know what your insurance document looks like, even if you've never read it. So that's a different no than, I walked up to you and told you the insurance document and everything in it. Yes, Your Honor. And I didn't understand that he was making that argument, frankly. I thought he, and I was addressing his argument that the court's instruction, because it used the phrase unauthorized manner, was different than if it used the phrase unauthorized. And I don't see any such distinction in Ruan. And in fact, what's extremely important is that the defendant, Mr. Brindley, specifically agreed to that wording. It wasn't just that the court instructed that and then the defense counsel said, no, Your Honor, it shouldn't be phrased that way. He specifically agreed. At page 3871 of the record, the court says, I'll read from the instruction, the fourth element, that the defendant knew that he was in an unauthorized manner when he dispensed the controlled substance or intended to act in an unauthorized manner. Does the defense have any problems with that language? Mr. Brindley, no. I think we all, the court, I think we all agree on that. That's directly from Ruan, right? Mr. Brindley, we agree on that. There's no issue here. The error, if any, is something that's subject to plain error review. There is no case of this court or any court that I'm aware of that says, if the court says unauthorized manner, it's different than unauthorized. That point of defendant's argument has no support anywhere. Would you just respond to Mr. Brindley's overall description? This is more or less my words but he was saying that this wasn't like a pill mill type situation but that this, Mr. Martinier was sort of conscientiously trying to follow the rules and wasn't overstepping in terms of providing prescriptions. What's the government's view of that under the facts that were proven? Yes, Your Honor, absolutely. There were trappings of a legitimate medical practice here, of course. This was not the kind of case where there was a stack of pre-signed prescriptions but there was a lot of evidence that this was a pill mill. Patients were coming in and we know when I . . . We have two undercover officers who went in and their meetings with Dr. Lamartinier were recorded so we know exactly how those went. In both of those, the patients complained about things for which there was no documentation. The defendant asked for no medical records. The defendant got no diagnostics. The defendant admitted on the recordings, I know that I'm treating you for something that I have no evidence of. He said that. Confused the right leg with the left leg at one point, as I remember. Yes, Your Honor, that's one of them. Detective Dixon said it was one leg then he switched to another leg then he switched another time back to the original leg. The defendant himself admitted, we don't know that you have anything as to both of them. What is the difference between a negligent kind of nutty doctor who's not keeping records and is kind of screwing up and one who should be put in prison? Because there are certainly like bad lawyers out there but they don't get put in prison necessarily for just being not the best lawyer. Where is that difference between sort of malpractice, not being the best lawyer, and not being the best doctor? It's the knowledge and intent requirement, Your Honor, that Ruan imposes. And when a doctor knows he is stepping outside the bounds of professional practice or he knows that he has no legitimate medical purpose. But as far as his knowing, what if he's just confused? He's just not the brightest doctor out there. You know what I mean? Sort of like where a lawyer doesn't bother to read the rules of the appellate procedure or something like that and comes in and messes up. That's not necessarily the same time as the same kind of person who's trying to violate rules. I think that a person who's just mixed up and doesn't know what the rules are, Your Honor, is not the case we have here. That person wouldn't have knowledge. Knowledge means actual knowledge. So you're saying the jury had to find he knew, don't do this, and did it anyway. Yes, Your Honor. And that's the fourth element that the court read to the jury, that he must know that he was acting in an unauthorized manner or he intended to. And that's something the jury could have found either way by assessing, because he testified, the defendant testified. They could assess him. They could assess the people who testified. That's why it goes to a jury, is your point. And the recordings support the jury's decision, Your Honor, because there is time after time in the recordings where the defendant says things such as, I know I'm supposed to be getting documentation of your injury, but I'm not. I know I'm supposed to be monitoring your taking of these medications, but I'm not. I know I'm supposed to be doing drug screens, but I'm not. It's over and over in the recordings that he absolutely knew he was supposed to be doing things to treat these patients like a doctor, and he wasn't, which gets you back to what the United States Supreme Court said in the Moore case, which is if a doctor is not acting like a doctor, then he's not authorized under the Controlled Substances Act to prescribe controlled substances. And that takes us back to your question, Judge Haynes, about the counts in which the defendant prescribed medications after his license to prescribe medications had been suspended. There is no way that he could have thought he was acting as a physician in the words of the Moore case when he knew he was not lawfully allowed to act as a physician by doing that. And Moore also phrases the standard as if the defendant was engaged in legal activities. He knew that wasn't legal because he had no license to do it. And Moore also says that the Controlled Substances Act statutory scheme contemplates licensure by the state. When there's not licensure by the state, there is not authorization. So the point being that the only way that these controlled substances can go from somebody to somebody is if that first somebody is a doctor. So in other words, if the husband gets it, he can't give it to the wife. Correct, Your Honor. Assuming the husband's not a doctor, can't give it to the wife, and so on. So your point is to be able to give it, you have to be a doctor, and when you lose your license, that's a problem. So that the rule is basically, don't give these out. Except this little exception. Yes, Your Honor, that's exactly it. This is an exception, and the Moore case said that this is not a categorical exception. If you have a medical license, I mean, excuse me, if you have a medical degree, you can just prescribe things. It's not. You have to be lawfully engaged in the practice of medicine. You have to be engaged in the usual, the prescription has to be issued in the usual course of professional practice. So doctors can't just run around, since they have a white coat, and just hand out prescriptions. And that's because this law was passed because there were problems with these drugs. That's correct. It's not your typical going to the doctor and they hand you out something for your, you know, high blood pressure or something like that. It's because these, the opioids and everything have been quite an issue, and so they're trying to cubby it, right? Yes, Your Honor, absolutely. All of these drugs have been found to have high potential for abuse, and that is why they are so regulated. And problem, not just abuse, but problems. Yes, Your Honor. Let me ask you a question. The doctor testifies, did he admit that he knew he couldn't prescribe without the state license? Yes, sir. Well, I mean . . . Except that, and I will tell you that he said he knows you can't prescribe without a state license. But he said he thought he was authorized because of this mix-up when he met with the board's official. And she said, Dr. Mouton said, I will recommend to the board that you get an extension. The board issued him a letter giving him an extension. He gets a letter on January 4th of 2016 that says, nope, you can't prescribe anymore. He admits he got that letter, and he prescribed after that. Okay. When the court charged that a physician cannot dispense these prescriptions for a controlled substance without the state license, and the doctor admits he didn't have a state license, I mean, isn't that almost a direct, you know, verdict of guilt under the statute? I think it comes pretty close, Your Honor. The court did, however, in the jury instructions, say that as far as regulations and standards, those were just one factor. It did not instruct the jury that if you don't have a license, you can't prescribe. And the jury still could have found, as a matter of fact, that Dr. Lamartiniere believed that he had this extension. They obviously didn't believe it, and the testimony from Dr. Mouton was that he didn't have any extension. But when the court charged that the doctor is not authorized to issue the prescription without having the license, I mean, they're entitled to accept that as established. And then when the proof shows that he didn't have a license, where do they have room, you know, legitimately not to find a guilty verdict? Your Honor, they didn't—the court didn't instruct that it was a per se unauthorization. It just instructed us to what the law is, that for a prescription to be valid, it must be issued by a doctor that has a state license and is registered. Now, there's other cases where, in the Bennett case, for example, this court said it's okay to tell the jury what regulations provide, and that if you don't say that's a per se violation, and the jury is still allowed to make their determination— But did the court charge that this is not a per se violation, and you—I know they had some other charges that said you must consider all the circumstances and so forth. That's essentially it, Your Honor. And there was one specifically, and I think it was—the court instructed, likewise, acting outside the standard of care generally required of physicians throughout the United States alone does not establish the defendant's guilt. So that was about the standard of care, not specifically the regulation, but it did say the jury could consider all the facts and circumstances. And in the Bennett case, it's not clear—the charge was not in the case, but the court did not say that the jury was instructed, this is not a per se violation, it's just that the jury was not instructed that it was a per se violation. And am I right that the sentencing is all concurrent? So if—and I'm not—I'm just as a hypo—if we were to throw out all the rest but keep counts one through seven, he would spend the same time in prison. I know it's not irrelevant, obviously. Every conviction is something you want to get rid of, but as far as the prison time, it's the same, right? Your Honor, I think so. And I say that with a little hesitation because I'm not positive, and I would have to check the record on that, and I could do that and respond in a letter after. Oh, it's fine. And I just—that's my understanding, but, you know, just checking in with you on that. I wanted to address Mr. Brindley's argument about the regulation and that the standard in this case comes only from the regulation and not from the statute, and therefore, it's not entitled to any deference. I disagree with him that that's where the standard comes from. The Supreme Court said that this standard comes from the statute. In the Gonzales v. Oregon case, the court had to consider whether an interpretive rule concerning that regulation was entitled to any deference, and the court held that the regulation at issue here, 21 CFR 1306.04, was merely a parroting regulation and that it merely paraphrased what's in the statute, it repeats what's in the statute. In other words, it's nothing more than the statute. Admittedly, the statute doesn't say in very direct terms what the standard for authorization is. The Supreme Court called it a circular definition, and it really is. Section 822B basically says a registered physician is authorized to the extent of his authorization, so it's a circular definition. But the Moore Court found a standard in the statute, and what the Moore Court said the standard was was the usual course of professional practice. And then Gonzales comes along, looks at the regulation and says, you know what, that regulation is found in the statute as well, because there are numerous places in the statute where Congress referred to either the course of professional practice or medical purpose. And so it doesn't matter that this regulation is not entitled to any deference. We're not asking the court to give this regulation any deference. The case law of this court says that the standard, and the Supreme Court says that the standard is legitimate medical purpose and issued in the usual course of professional practice. That's the standard we've always operated by, and defense provides no reason why that's not the standard. At the best, he says legitimate medical purpose is the same as the usual course of professional practice. And if that's so, there's no error in instructing in the disjunctive, and that's exactly what the Armstrong case held, as Judge Davis mentioned. Mr. Brindley suggests that the Armstrong case was somehow overturned by Ruan, but Ruan and Armstrong dealt with entirely separate things. Ruan dealt only with the issue of mens re. And in the course of the opinion, as a matter of fact, the Ruan court said that the parties and the courts below had assumed that the standard for authorization was legitimate medical purpose and usual course of professional practice, and so the Supreme Court said we will assume that as well. So the Supreme Court assumed that that's the standard, and Armstrong held that that's the standard. Armstrong says that the jury instructions in that case made it sound like the two things were the same, and so there was no error. So if Mr. Brindley is right that legitimate medical purpose and usual course of professional practice are the same, there's no harm and no error in instructing in the disjunctive. So you're saying under a rule of orderliness, we have to continue to follow Armstrong because Ruan didn't overrule him? Yes, Your Honor. Yes, Your Honor. Absolutely. Mr. Brindley said that one of the problems with the court's instructions was that aside from instructed on intent and knowledge, consistent with Ruan, but then somehow undermined that with a definition of purpose. There is no definition of purpose in the court's instructions. I don't know where he's getting that from. There is a reference to legitimate medical purpose in the usual course of professional practice, which is the standard for authorization. So the court just gave the standard. He didn't undermine the intent requirement. Those are two separate elements, the authorization requirement and the intent requirement. Mr. Brindley also argued that Ruan said that good faith was not, that a good faith instruction was not sufficient to, he didn't say to confirm in his right, he said it was wrong. The Ruan court actually did not reach the issue of whether the jury charges in that case were sufficient. It remanded and the lower courts decided that. Also those instructions were dealing with, and the courts after, on remand, when the court said, oh, you know what, the good faith instructions don't match Ruan, it was saying they don't match Ruan on the mens rea requirement. They don't sufficiently convey the mens rea requirement. That's not a problem we have here. The fourth element of the jury instructions as given by the court and as agreed to by the defense gave the Ruan jury instruction. That's all that was necessary. That's exactly what Ruan requires. So Ruan in no way is, the jury instructions in this case are in no way undermined by Ruan. And unless the court has any further questions, I'll conclude my remarks. Thank you. Thank you, Ms. Jones. Mr. Brindley for rebuttal. Thank you, Your Honor. First of all, in isolation, the elements instruction, if it had just been left at that, that he had to know that he was acting in an unauthorized manner, it might have been fine. But when a further definition of terms reduces the burden on the government, it renders the elements instruction incorrect. And that's what happened here. What I'm talking about is he instructed the jury, the district court, that a controlled substance is prescribed by a physician for a legitimate medical purpose and therefore authorized if it's prescribed in good faith. Then he says good faith means an honest effort to prescribe in accordance with standards generally recognized. So that ultimately tells the jury what purpose is good enough. And so if the doctor legitimately believed he was trying to help his patients, he's still guilty because he wasn't acting within these standards. And Ruan said that doctor should not be guilty. Regarding this statement that they say that Ruan assumed that the regulation language established authorization, Ruan didn't say that it did. The reason they said that it assumed it is because that wasn't the issue that was expressly being argued at the time. However, when it went back down to the district court, I'm sorry, the Tenth Circuit, the Tenth Circuit made an explicit finding based on Ruan. And so that the regulation language was not consistent with the logic of Ruan. Yeah, that's not consistent with Armstrong, though, is it? The Tenth Circuit's position is absolutely opposed to Armstrong. You got a split that I think this court needs to consider. They say the opposite of what Armstrong says. We're bound to follow Armstrong, though. You're only bound to follow Armstrong unless and until there was an intervening en banc precedent or Supreme Court precedent. And I believe Cargill plus Ruan plus the major questions doctrine in the Supreme Court provides an adequate intervening opinion since Ruan to render the case that orderliness does not require it to be followed here. Regarding counts one to seven, what's important here is the question is whether he's not guilty of some offense by prescribing without a license. Is he guilty of drug trafficking under 841? And the Controlled Substances Act says even to revoke his registration, one factor only to be considered is whether he's been suspended. It's not dispositive. If it's not dispositive with respect to revoking his registration, it certainly shouldn't be automatic that if he doesn't have a license, he's guilty of violating 841. He's guilty of state problems. But why is it not dispositive when you have to be a legitimate doctor to even prescribe these? Well, he was, he had a... That's the cubby. He had, he had his federal, he had, once he has his DEA registration, that provides him with a federal authority to prescribe controlled substances. Right.  But he has to be a doctor in the state because that's who's giving out... It doesn't say that, though. The Controlled Substances Act does not say he has to be a doctor in the state in order to prescribe once he has the DEA registration. If he's suspended, they'll consider that as one thing, whether or not they revoke him. If they don't revoke him, he still has the authority. That's why the instruction was wrong to say that it was required, and it was a directed verdict required on that. And that was improper. It's a regulation. We asked the district court to instruct the jury that this was a regulation, 1306.03, and they refused. He told them it is, if it's just the law, it's like it's in the statute. It's not. Didn't the judge also charge that violation of state or federal regulation is one factor to be considered? I don't remember him charging it exactly in that way. He said you had to consider the totality of it. But the problem is, he said to the jury, most importantly, one, with respect to counts one to seven, that you're only authorized if you got this license. So if you don't, you're done. How do you get beyond that? And then two, with respect to the other charges, he said that your purpose is only legitimate if you're acting in accord with these other standards, which Ruan says it's not. Well, the jury has to look at the charges as a whole, though. I mean, the statement of law is correct that you have to have a license to prescribe these drugs. That statement of the law is correct. And if they charge it otherwise, that it's only one of the factors to consider, I don't . . . you know, the jury could . . . taking the charges as a whole could have found that that wasn't the only thing. I think . . . perhaps, but I think telling them that may have put them in a position where they were improperly instructed on what the statute itself says. And with that, it appears my time has been exhausted. We ask that you reverse on all charges so the defendant can be resentenced. And he will have to be resentenced even if it's on one to seven. There will have to be another sentencing. That is . . . and then the judge can consider what he'll give him for those alone. Thank you. All right. Thank you, Mr. Renly. Your case is under submission.       ? ? ? ? ? ? ? ? ? ? ? ? ? ? ? ? ? ?     ? ? ? ? ? ? ? ? ? ?